## Case No. 12,262.

### SALMON et al. v. BURGESS.

[1 Hughes, 356; [1] 21 Int. Rev. Rec. 333.]

Circuit Court, E. D. Virginia. Sept., 1875.[2]

STATUTES—DAY OF PASSAGE—EX POST FACTO LAWS.

1. The fiction of law requiring a statute to be construed as in force during the whole of the day on which it passed, is a rule of mere convenience, and must give way when the priority of different events comes in question, and the right and justice of the case require.

2. An act of congress increasing taxes and denouncing penalties, falls within the provisions of the first article of the national constitution prohibiting ex post facto laws, and giving effect to statutes only from the time of their receiving the president's signature.

3. The proviso in the act of March 3d, 1875 [18 Stat. 339], entitled "An act to protect the sinking fund and providing for the exigencies of the government," declaring that the increase of tax on tobacco therein provided for shall not apply to tobacco on which the tax had been paid when the act took effect, refers to the hour of the day on which the president's signature was affixed, and not to any antecedent part of the day.

This action is heard now, by consent of counsel, on the facts as set forth in the declaration, and on the general demurrer filed by the district attorney. The declaration, embracing several counts, sets forth in substance that, as to 9445 pounds of tobacco manufactured by the plaintiffs [Salmon & Hancock], they had before 3 o'clock p. m., of the 3d of March, 1875, purchased stamps of the proper officer, at the rate of 20 cents a pound, and affixed them to boxes of tobacco duly cancelled, and shipped the boxes from their factory, and thereby parted with all property in or control over the tobacco; that until 5 o'clock p. m., of the same day, the collector of internal revenue at Richmond, Rush Burgess, the defendant, had received of the plaintiffs and of tobacco manufacturers generally, 20 cents a pound for stamps on tobacco, and issued the stamps at that rate. doing so under express instructions from the commissioner of internal revenue at Washington, directing him to continue to do so until otherwise instructed; that these instructions continued in force until 5 o'clock p. m., of the said 3d day of March, 1875, and were at that hour revoked; that 20 cents per pound was the tax required to be paid by the law, at the time when the plaintiff stamped and shipped the said 9445 pounds of tobacco; that the act increasing the tax from 20 cents to 24 cents, entitled "An act to protect the sinking fund and provide for the exigencies of government," was not signed and approved by the president of the United States, until 9 o'clock p. m. of the said 3d of March, 1875; that some time after the said last-mentioned date, the said collector applied to and collected from the plaintiffs an additional four cents a pound on the said 9445 pounds of tobacco, amounting to $377.80; that the plaintiffs paid this additional amount under protest, and appealed against it to the commissioner of internal revenue at Washington; that the said appeal was denied by the said commissioner, and that in consequence of this denial, and of the wrongful collection by the defendant of the additional amount of $377.80, which has been often demanded, and payment thereof and of any part thereof refused, the plaintiffs now bring this action. The suit was brought in the circuit court of Richmond, and has been removed into this court by certiorari; some half dozen suits at law involving the same facts and questions of law are pending which, it is agreed on both sides, shall await the result of this suit. The case is heard upon the general demurrer of the defendant, which of course confesses all the facts that have been above recited. The act of the 3d of March, 1875, which is averred to have been signed and approved by the president at 9 o'clock p. m. on that day, enacts in its second section as follows: "That section three thousand three hundred and sixty-eight of the Revised Statutes be, and the same is hereby amended by striking out the words 20 cents a pound and inserting in lieu thereof 24 cents a pound; * * * provided, that the increase of tax herein provided for shall not apply to tobacco on which the tax under existing law shall have been paid when this act takes effect."

Wm. P. Barwell, for plaintiffs.

L. L. Lewis, U. S. Atty., for collector.

HUGHES, District Judge. The question for decision is, whether the court can take notice of fractions of a day, and consider the act of March 3d, 1875, increasing the tax on tobacco four cents on the pound, as having "taken effect" at 9 o'clock p. m. on that day, according to the fact as admitted in the pleadings and according to the apparent intention of the proviso of the act; or, whether it is bound by a fiction of the law, which gives a statute efficiency throughout the day on which it is enacted, to construe the statute as having been in force throughout the 3d day of March, 1875. Another fact conceded in the pleadings is, that express instructions have been received by the collector in Richmond, from the commissioner in Washington, to continue to receive as the tax and issue stamps for tobacco at the rate of 20 cents per pound on that day, and that throughout the business hours of the day those instructions remained in force, and were not revoked until 5 o'clock p. m. Fictions of law are intended merely for convenience, and are now never enforced in prejudice of the right and justice of a case. "Fictio juris neminem lædere debet." Many fictions of law which were observed in former times are no longer enforced. It was formerly, for instance, a fiction of law that an act of parliament, passed at any day of a session, related back to and became a law as of the

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

[2] [Affirmed in 97 U. S. 381.]

first day of the session, if the time for its taking effect were not mentioned in the act itself. A similar fiction was observed as to judgments at law, which were held to relate back and bear date as of the first day of the term of the court at which they were rendered. As to the fiction relating to statutes, it was never abrogated in England until the act of 33 Geo. III. c. 13, when it was enacted by parliament that each act should take effect from the day of its passage, or the day mentioned in the act itself. But this statute was not passed until 1793, and was never in force in the thirteen colonies. It is presumed that most of the states of the Union passed laws similar to the act of Geo. III. just mentioned. Be that as it may, we have to do in the present case only with a law of congress; and the constitution of the United States embodies provisions restricting the operation of acts of congress to the time of their passage. Article first of that instrument contains two provisions, one of them disabling congress from passing any ex post facto law; and the other declaring that, before a bill shall become a law, it shall have been presented to the president, and either signed by him or passed over his veto by two-thirds of both houses of congress. In point of fact, this approval and signing, by the president, of the act of congress now under consideration, as conceded in the pleadings, did not occur until 9 o'clock p. m. of the 3d of March, 1875, several hours after the close of business in Richmond on that day, and after the tobacco in question had passed from the plaintiff's control. The question here is, not between different days, as was the question in the cases of Arnold v. U. S., 9 Cranch [13 U. S.] 104, and of Matthews v. Zane, 7 Wheat. [20 U. S.] 164; for counsel on both sides concede that it went into effect on the 3d of March, 1875. But the question here is, upon fractions of the same day. It is a fiction of law, applied for convenience, that there are no fractions of a day; but is this fiction to be enforced in spite of the fact admitted upon the record, against express provisions of the constitution of the United States? The cases just cited decide that a law of congress must go into operation on the day of its passage, rather than on a day subsequent, a proposition conceded by the plaintiffs. Every act does unquestionably take effect from the day of its passage or the day mentioned in the act itself. The question behind the one decided in 9 Cranch [13 U. S., supra] and 7 Wheat. [20 U. S., supra] is, must every statute be held to cover the whole of the day on which it goes into effect? Is this fiction of law to be enforced in all cases, even when the statute, as in the present instance, itself provides that it shall not apply to acts committed before its taking effect?

It was conceded by the district attorney that the fiction of law in question does not apply to penal statutes. A penal law relating back a half day or a single hour, would be just as positively an ex post facto law as it would be if it related back a whole day, or a month, or a year. A penal law of congress confessedly cannot be enforced against an act committed an hour before the bill making the act penal was signed by the president, though on the same day. It is claimed, however, by the district attorney that the rule is different in respect to remedial laws; which latter the law under consideration is not, it being a law imposing a tax and denouncing penalties for the non-payment of the taxes it imposes.

Such a concession as that mentioned would seem fatal, therefore, to the present defence; for this law of the 3d of March, 1875, must be construed in the same way as to all its features. Otherwise, we are reduced to the alternative of construing its penal provisions as having taken effect at 9 o'clock p. m. of a certain day, and its provisions not penal as having taken effect twenty-one hours beforehand, which construction would be absurd. The law is an entirety. If, as to its penal features, it cannot be held to have gone into effect until 9 p. m. of the day of its enactment, neither can it be held to have gone into effect before that hour as to its other provisions. Independently, however, of this latter consideration, the weight of authority seems to me to greatly preponderate in favor of the proposition that the courts may consider fractions of the same day in enforcing statutes.

In Wrangham v. Hersey, 3 Wils. 274, the court remarked: "It is said there is no fraction of a day, but this is a fiction in law, 'Fictio juris neminem lædere debet'. . . . By fiction of law the whole term, the whole assizes, and the whole session of parliament may be, and sometimes are, considered as one day, yet the matter of fact shall overturn the fiction, in order to do justice between the parties."

In Combe v. Pitt, 3 Burrows, 1433, Lord Mansfield said: "Notwithstanding the general fiction of the whole term being but one day, yet when the priority of action becomes essential and necessary to be ascertained, the particular day must be shown. . . . But though the law does not, in general, allow of the fraction of a day, yet it admits it in cases where it is necessary to distinguish. And I do not see why the very hour may not be so, too, where it is necessary, and can be done, for it is not like a mathematical point which cannot be divided."

Judge Kent says (1 Comm. 455): "It cannot be admitted that a statute shall, by any fiction or relation, have any effect before it was actually passed. A retroactive statute would partake in its character of the mischiefs of an ex post facto law as to all cases of crimes and penalties, and in every other case relating to contracts or property it would be against every sound principle."

In Re Ankrim [Case No. 395], Justice Mc-

Lean, of the supreme court of the United States, said in circuit court: "It is unaccountable that the construction (that every statute begins to have effect, unless a time for its commencement is therein mentioned, from the first day of the session of parliament in which it is made) should have been continued by the English courts down to the year 1772. Nothing could show more forcib y with what pertinacity enlightened judges adhered to an established construction of the statutes. This is not objectionable where no injustice is done to private rights. But where the law was made to have a retrospective effect, even to the forfeiture of life, it is a reproach to the tribunals of justice. In our government such a statute would be ex post facto, and in violation of the constitution of the United States. The injustice of this construction in regard to civil rights is equally clear, except where the provision is of a remedial character. . . . That to notice a fraction of a day would be productive of inconvenience is readily admitted. In most cases, where no rights are impaired by the statute, there could be no ground of complaint. But suppose a legislature should make a certain act a capital offence, and the law should take effect on the day of its date, could an individual be punished under it for an act done on the same day, but before the statute was in fact passed? If in such a case an individual could be punished, it would be in virtue of a fiction of law, and there is no difference in principle in a fiction that shall give the statute a retroactive effect of half a day or half an hour. In the one case, as well as in the other, when the act complained of was done, it was innocent, but a statute subsequently passed makes it penal. And if punishment in the one case be inflicted, it may be in the other. The only difference is in time, not in principle. A rule of construction which leads to such a result, cannot be a sound one. Like many technicalities which have grown out of judicial action, the fiction is sustained neither by justice nor reason. . . . All who are acquainted with the history of legislative action in congress, know that bills passed on the 3d of March in what is called the 'short session,' are signed by the president late in the evening of that day, and are not published until some days afterwards. But the repealing act in question provides that it shall not affect any case or proceeding in bankruptcy commenced before the passage of this act. Now suppose by a fiction the repealing law would take effect so as to include that day, still the saving goes to the passage of the act, and not to the time it took effect." The decision of the court was, that fractions of the day could be considered, and that the statute did not take effect, as to the right of filing a petition in bankruptcy, until the actual time of its approval by the president.

In Re Richardson [Case No. 11,777], Justice Story said in circuit court: "I am aware that it is often laid down that in law there is no fraction of a day. But this is true only sub modo, and in a limited sense, where it will promote the right and justice of the case. It is a mere legal fiction, and, like all mere legal fictions, is never allowed to operate against the right of the case. On the contrary, the very truth and facts in point of time may always be averred and proved in furtherance of justice, and there may be even a priority in an instant of time, or, in other words, it may have a beginning and an end. . . . So that we see that there is no ground of authority, and certainly no reason, to assert that any such rule prevails as that the law does not allow of fractions of a day. On the contrary, common sense and common justice equally sustain the propriety of allowing fractions of a day, whenever it will promote the purpose of substantial justice. Indeed, I know of no case where the doctrine of relation, which is a mere fiction of law, is allowed to prevail, unless it be in furtherance and protection of rights pro bono publico. . . . In every case of a bill which is approved by the president, it takes effect as a law only by such approval, and from the time of such approval. It is the act of approval which makes it a law, and, until that act is done, it is not a law. The approval cannot look backwards and, by relation, make that a law which was not so before the approval, for the general rule is, 'Lex prospicit, non respicit.' The law prescribes a rule for the future, not for the past, or, as it is sometimes expressed, 'Lex dat formam futuris, non preteritis negotiis.' And this, in a republican government, is a doctrine of vital importance to the security and protection of the citizen. It is fully recognized in the constitution itself, which declares that no ex post facto law shall be passed. . . . Surely the constitution is not to be set aside or varied in its intendment by mere legal fiction. On the contrary, it appears to me that, in all cases of public laws, the very time of the approval constitutes, and should constitute, the guide as to the time when the law is to have its effect, and then to have its effect prospectively, and not retrospectively. It may not indeed be easy in all cases to ascertain the very punctum temporis, but that ought not to deprive citizens of any rights, created by antecedent laws, vesting rights in them. In cases of doubt, the time should be construed favorably for the citizens. The legislature have it in their power to prescribe the very moment in futuro after its approval when a law shall have effect, and if it does not choose to do so, I can perceive no ground why a court of justice should be called upon to supply the defect. But when the time can be accurately ascertained, I confess that I am not bold enough to say that it became by relation a law at any antecedent period of the same day. I cannot but view such an interpretation as at war with the true character and objects of the constitution."

In Pearpoint v. Graham [Case No. 10,877], Justice Washington said in circuit court: "There is in contemplation of law no fraction of a day, unless when an inquiry, as to a priority of acts done on the same day becomes necessary."

In Re Wynne [Case No. 18,117], Chief Justice Chase said in circuit court at Richmond: "Much was said in argument concerning the effect of the record of this deed upon the 2d of March, 1867, and it was strenuously urged that the deed was avoided by the effect of the (bankruptcy) act, which purports to have been approved on that day. But we entirely concur with Mr. Justice Story in thinking that, where the question is as to the effect of a proceeding instituted on the same day on which an act affecting the validity of such proceeding was passed, the precise time at which the act became a law may be properly inquired into. Gardner v. Collector, 6 Wall. [73 U. S.] 499. And in this we think ourselves warranted by the reasoning of the supreme court."

I find no decision of the supreme court of the United States directly in point on this question of the fraction of a day. But that court held, in the case cited by Chief Justice Chase, of Gardner v. Collector, 6 Wall. [73 U. S.] 511, "On principle as well as on authority, that whenever a question arises in a court of law of the existence of a statute, or of the time when a statute took effect, or of the precise terms of a statute, the judges who are called upon to decide it have a right to resort to any source of information which in its nature is capable of conveying to the judicial mind a clear and satisfactory answer to such question, always seeking first for that which in its nature is most appropriate, unless the positive law has enacted a different rule." Here is at least an assertion of the right of the court to take judicial cognizance of the very time when a statute was passed.

The district attorney cited an opinion of the attorney-general of the United States, published in 21 Int. Rev. Rec. 90, to the effect that every act of congress relating to revenue must be construed to embrace the whole of the day on which it becomes a law. I think the opinion of a preceding attorney-general, published in 3 Op. Attys. Gen. 82, is more in accordance with authority and reason. The treasury-department was there advised: "That a law of congress which contains no provision as to the time when it shall take effect, commences and takes effect, as a law, from the moment it receives the approbation of the president, and that, as a general rule, it is not competent to go into the division of a day. But this rule is not universal, and when questions of right growing out of deeds, judgments, and other instruments bearing the same date are concerned, the precise time is allowed to be established. If it be true, in point of fact, that the act of the 3d March, 1835, did not receive the president's signature

21 FED. CAS.—17

until after office hours on that day, then a right had been acquired by Major Hunt, which ought to be protected, and for that purpose I am of opinion, in analogy to the excepted cases just alluded to, that the precise time may be inquired into. This is also necessary, in order to prevent the law from operating retrospectively for a part of the day on which it commenced."

The only cases which have been cited in support of the proposition that fractions of a day cannot be considered by the court, and that every act of congress not penal must be construed to relate back to the beginning of the day on which it was signed by the president, are those of In re Welman [Case No. 17,407]; In re Howes [Case No. 6,788]; U. S. v. Williams [Case No. 16,723]. The first two cases were decided by District Judge Prentiss, who sustained his view by a very able opinion, chiefly based on the grounds of convenience and necessity. The other case was decided by Justice Livingston sitting in circuit court. The weight of authority so greatly preponderates against these decisions, and, I must add, the weight of argument also, that I feel constrained to be governed by the decisions of Judges Mansfield, McLean, and Story, which I had previously cited. The fiction of law must give way in this case to the facts of the record, and I must hold that the amendatory act of 3d March, 1875, increasing the tax on tobacco, did not relate back and cover any part of that day anterior to the hour when it received the signature of the president. The demurrer must be overruled.

[Judgment was given for plaintiffs, and was affirmed by the supreme court, where it was carried on writ of error. 97 U. S. 381.]